# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENNIFER STILL-DOBSON, individually and on behalf of all other similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. CIV-21-579-PRW ) |
| BRSI, LLC d/b/a BIG RED KIA, | ) ) |
| Defendant. | ) ) |

## DEFENDANT'S MOTION TO STAY AND TO COMPEL ARBITRATION AND BRIEF IN SUPPORT

## MOTION

Defendant BRSI, LLC d/b/a Big Red Kia respectfully moves the Court for an order staying the instant lawsuit and compelling to arbitration the claim made by Plaintiff Jennifer Still-Dobson. In support of this Motion, BRSI states that Plaintiff's claim is subject to a valid, enforceable Agreement to Arbitrate which requires arbitration of any "disputes related to . . . the Vehicle" which Plaintiff purchased from BRSI and which Plaintiff now alleges BRSI tried to buy back from her via prerecorded message. *See* Ex. 1, Agreement to Arbitrate. Accordingly, the Federal Arbitration Act ("FAA") and authorities applying it require that this Motion be granted. For further support, BRSI submits the following brief in support.

29030817_1

# BRIEF IN SUPPORT

# STATEMENT OF FACTS

1. On or around November 19, 2015, Plaintiff entered into an agreement to purchase a used 2011 Kia Sorento (the "Vehicle") from BRSI. *See* Ex. 2, Retail Purchase Agreement/Bill of Sale.

2. Plaintiff's purchase of the Vehicle from BRSI was consummated via the parties' execution of a series of documents, including the Agreement to Arbitrate, part of which is shown below. *See* Ex. 1, Agreement to Arbitrate.

> The Parties acknowledge and understand that they are waiving their right to a jury trial by entering into this Agreement. If any term of this Agreement conflicts with the terms of any other document or agreement between the parties, the terms of this Agreement shall prevail. If any part of this Agreement shall be declared unenforceable for any reason, the remainder of the Agreement shall remain enforceable. BY SIGNING BELOW, CUSTOMER ACKNOWLEDGES THAT HE OR SHE HAS READ THIS AGREEMENT TO ARBITRATE AND AGREES TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT. THIS AGREEMENT IS INCORPORATED BY REFERENCE INTO THE RETAIL PURCHASE AGREEMENT. IT MAY NOT BE MODIFIED OR AMENDED EXCEPT BY A SEPARATE WRITTEN AGREEMENT SIGNED BY CUSTOMER(S) AND AN AUTHORIZED DEALERSHIP REPRESENTATIVE.
>
> Customer _[signature]_    Date      Authorized Dealership Representative _[signature]_   Date 11/7/19
>
> Customer           Date
>
> AGREEMENT TO ARBITRATE (Revised_Clean)

3. The Agreement to Arbitrate states, among other things: "BY SIGNING BELOW, CUSTOMER ACKNOWLEDGES THAT HE OR SHE HAS READ THIS AGREEMENT TO ARBITRATE AND AGREES TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT." *Id.*

4. The Agreement to Arbitrate delegates to the arbitrator the authority to decide the threshold issue of arbitrability. *See id.*

> **AGREEMENT TO ARBITRATE**
>
> Dealership Name: BRSI, LLC          Date: 11/19/2015
> Customer Name(s): JENNIFER D DOBSON
> Vehicle Description: 2011 KIA SORENTO 5XYKT3A12BG152030
>
> By entering into this Agreement to Arbitrate ("Agreement"), Customer(s) and Dealership, including any Assignee (collectively referred to as "the Parties") agree, except as otherwise provided in this Agreement, to settle by binding arbitration any dispute between them regarding: (1) the purchase/lease by Customer(s) of the above-referenced Vehicle; (2) any products and services purchased in conjunction with the Vehicle; (3) any financing obtained in connection with the transaction; and/or (4) any other dispute related to the purchase/lease transaction. ==Matters that the Parties agree to arbitrate include==, but are not limited to, ==disputes related to== the following: ==the existence, scope, or validity of this Agreement or the arbitrability of any claim or counterclaim==; the availability of class, collective, multi-plaintiff, or representative proceedings; the Retail Purchase Agreement or any documents incorporated therein by reference (whether such reference is made in the Agreement or in the document itself); the application for and terms of financing for the transaction; the Retail Installment Sales Contract; the Vehicle; any advertisement(s) made by the Dealership; any alleged promises, representations and/or warranties made to or relied upon by the Parties; and any alleged unfair, deceptive, or unconscionable acts or practices. The Parties agree any claims must be brought in an individual capacity, and not as a plaintiff or class member in any purported class, collective, multi-plaintiff, or representative proceeding. There shall be no right or authority for any claims between the Parties to be arbitrated on a class-wide basis.

5. As to its overall applicability and scope, the Agreement to Arbitrate states:

> By entering into this Agreement to Arbitrate ("Agreement"), Customer(s) and Dealership, . . . agree, except as otherwise provided in this Agreement, to settle by binding arbitration ***any dispute*** between them regarding: (1) ***the purchase/lease by Customer(s) of the above-referenced Vehicle***; (2) any products and services purchased in conjunction with the Vehicle; (3) any financing obtained in connection with the transaction; and/or (4) ***any other dispute related to the purchase/lease transaction***. ***Matters that the Parties agree to arbitrate include***, but are not limited to, ***disputes related to the following:*** [1] the existence, scope, or validity of this Agreement or the arbitrability of any claim or counterclaim; [2] the availability of class, collective, multi-plaintiff, or representative proceedings; [3] the Retail Purchase Agreement or any documents incorporated therein by refence (whether such reference is made in the Agreement or the document itself); [4] the application for and terms of financing for the transaction; [5] the Retail Installment Sales Contract; [6] ***the Vehicle***; [7] ***any advertisement(s) made by the Dealership***; [8] ***any alleged promises, representations and/or warranties made to or relied upon by the Parties***; and [9] any alleged unfair, deceptive, or unconscionable acts or practices.

*Id.* (italicized/underlined emphasis and bracketed enumeration added).

3

6. The Agreement to Arbitrate further provides that "[t]he parties acknowledge and agree that the Federal Arbitration Act (9 U.S.C. § 1 et seq) (FAA) shall govern any arbitration under this Agreement." *Id.*

7. On June 7, 2021, Plaintiff filed her Class Action Complaint. Therein, Plaintiff alleges a claim for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) *et seq.*, as to herself and as to a putative class. *See* Compl., ECF No. 1. Specifically, Plaintiff claims that BRSI, in order to market its business (the sale and purchase of new and used cars), "uses prerecorded messages to send prerecorded voice messages to individuals' cellular phone numbers without first obtaining the required express written consent." *Id.* ¶ 3. As to Plaintiff, the Complaint alleges that BRSI used a prerecorded message asking Plaintiff to trade in the Vehicle and to test drive one of BRSI's new vehicles. *Id.* ¶ 24.

## ARGUMENTS AND AUTHORITIES

**I.    The Federal Arbitration Act governs the Agreement to Arbitrate.**

Congress enacted the FAA (originally called the United States Arbitration Act) in 1925 "for the express purpose of making valid and enforceable written provisions or agreements for arbitration of disputes arising out of contracts, maritime transactions, or commerce . . . ." *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 681-82 (2010) (internal quotation marks and citation omitted). Since then, courts across the country, including the United States Supreme Court, have reiterated that the FAA is primarily designed "to ensure that private agreements to arbitrate are enforced according to their terms." *Id.* at 682 (quotation marks and citation omitted); *see also AT&T Mobility*

*LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("In line with these principles, courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." (internal citations omitted)). Enforcing arbitration agreements according to their plain terms advances "a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration." *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1488-89 (10th Cir. 1994).

Here, there is no doubt that the Agreement to Arbitrate was entered into by Plaintiff and by BRSI with the understanding that the FAA would apply and that the Agreement to Arbitrate is subject to the FAA. *See* Ex. 1, Agreement to Arbitrate. By its terms, the Agreement to Arbitrate is subject to the FAA. *See id.* ("This Agreement evidences a transaction involving interstate commerce. The parties acknowledge and agree that the Federal Arbitration Act (9 U.S.C § 1, et. seq.) (FAA) shall govern any arbitration under this Agreement."). Accordingly, the Court should find that the FAA applies.

**II.     The Court should compel the case to arbitration because the parties delegated to the arbitrator the threshold question of arbitrability.**

Plaintiff and BRSI previously decided, in the Agreement to Arbitrate, that any questions regarding whether a claim is subject to arbitration would be decided by the arbitrator, not by the Court. Thus (and as explained in Part III *infra*), while the Agreement to Arbitrate encompasses Plaintiff's claim, the Court need not reach that issue. Instead, the fact that the parties contracted to arbitrate the threshold question of arbitrability is sufficient for the Court to compel this case to arbitration without taking any additional action or making any additional decisions. *See* Ex. 1, Agreement to Arbitrate (providing that the

parties agree to arbitrate "the existence, scope, or validity of this Agreement or *the arbitrability of any claim or counterclaim*" (emphasis added)).

The Supreme Court has made clear that threshold issues—such as arbitrability—are properly for the arbitrator, not the Court, to decide when they are so delineated by the parties:

> We must interpret the [FAA] as written, and the [FAA] in turn requires that we interpret the contract as written. **When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue.** That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

*Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (emphasis added); *see also Morris v. Airbnb, Inc.*, No. CIV-19-1157-G, 2020 WL 5823542, at *3 n.2 (W.D. Okla. Sept. 30, 2020) (citing *Henry Schein* and noting that "[e]ven if there was a question as to coverage, the Arbitration Clause delegates such questions to an arbitrator for resolution").

Here, Plaintiff has not challenged the validity or enforceability of the Agreement to Arbitrate. Therefore, the only question left for the Court is whether the Agreement to Arbitrate "delegates the arbitrability question to an arbitrator." *See Henry Schein, Inc.*, 139 S. Ct. at 529. It undeniably does:

> **AGREEMENT TO ARBITRATE**
>
> Dealership Name: __BRSI, LLC__                                    Date: __11/19/2015__
> Customer Name(s): __JENNIFER D DOBSON__
> Vehicle Description: __2011 KIA SORENTO 5XYKT3A12BG152030__
>
> By entering into this Agreement to Arbitrate ("Agreement"), Customer(s) and Dealership, including any Assignee (collectively referred to as "the Parties") agree, except as otherwise provided in this Agreement, to settle by binding arbitration any dispute between them regarding: (1) the purchase/lease by Customer(s) of the above-referenced Vehicle; (2) any products and services purchased in conjunction with the Vehicle; (3) any financing obtained in connection with the transaction; and/or (4) any other dispute related to the purchase/lease transaction. ==Matters that the Parties agree to arbitrate include,== but are not limited to, ==disputes related to== the following: ==the existence, scope, or validity of this Agreement or the arbitrability of any claim or counterclaim;== the availability of class, collective, multi-plaintiff, or representative proceedings; the Retail Purchase Agreement or any documents incorporated therein by reference (whether such reference is made in the Agreement or in the document itself); the application for and terms of financing for the transaction; the Retail Installment Sales Contract; the Vehicle; any advertisement(s) made by the Dealership; any alleged promises, representations and/or warranties made to or relied upon by the Parties; and any alleged unfair, deceptive, or unconscionable acts or practices. The Parties agree any claims must be brought in an individual capacity, and not as a plaintiff or class member in any purported class, collective, multi-plaintiff, or representative proceeding. There shall be no right or authority for any claims between the Parties to be arbitrated on a class-wide basis.

Ex. 1, Agreement to Arbitrate. The Court thus "possesses no power to decide the arbitrability issue." *Henry Schein, Inc.*, 139 S. Ct. at 529. The Court must both (i) stay this litigation and (ii) compel Plaintiff's claim to arbitration. *See id.*

### III. Alternatively, the Agreement to Arbitrate encompasses Plaintiff's claim and the Court should still compel the claim to arbitration.

For the reasons stated in Part II *supra*, the Court should compel the case to arbitration without reaching any additional issues simply because the parties agreed to arbitrate the threshold question of arbitrability. Still, should the Court disagree that the basis included *supra* is sufficient reason alone for it to compel arbitration, the Court should compel the parties to arbitration because the Agreement to Arbitrate encompasses Plaintiff's claim.

The FAA is clear on this topic:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under

7

> such an agreement, **_shall_** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added); *see Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1289 (10th Cir. 2016) (quoting § 3 and noting that it "mandates a stay of federal court proceedings pending arbitration" if the requirements of § 3 are met). Whether a particular claim should be compelled to arbitration—at least in those circumstances when the issue of arbitrability is decided by the Court—is based on a two-part test: "(1) whether a valid agreement to arbitrate exists, and (2) whether the subject matter of the dispute is covered by the arbitration agreement." *WEBCO Indus., Inc. v. Tex. Tubular Prods., Inc.*, No. 15-CV-704-JED-FHM, 2016 WL 9178806, at *2 (N.D. Okla. June 30, 2016) (quotation marks and citation omitted). As explained herein, the test to compel arbitration is satisfied, and the Court should order this dispute to arbitration according to the terms of the Agreement to Arbitrate.

Moreover, when in doubt, the Court is to default toward arbitration, not away from it. As Judge DeGiusti has summarized in regard to the FAA:

> When a contract contains an arbitration clause, there is a strong presumption that the dispute is arbitrable. Thus, an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. Although such presumption disappears where there is a dispute over whether a valid arbitration agreement exists, in the absence of any express provision excluding a particular grievance from arbitration, only *the most forceful evidence* of a purpose to exclude the claim from arbitration can prevail.

*MidFirst Bank v. Safeguard Props., LLC*, No. CIV-17-231-D, 2017 WL 1906946, at *2 (W.D. Okla. May 8, 2017) (quotation marks, citations, and ellipses omitted).

### A. The Agreement to Arbitrate is valid.

The first prong of the test used to effectuate § 3's mandate—whether a valid arbitration agreement exists—is easily satisfied in the majority of cases merely by looking to 9 U.S.C. § 2: arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." This case falls in line with that majority, as Plaintiff has not alleged any grounds for the revocation of the Agreement to Arbitrate. *See* Compl., ECF No. 1. Because arbitration agreements are to be treated on equal grounds as contracts, and because Plaintiff has not alleged fraud, duress, or any other reason to question the validity of the Agreement to Arbitrate (and she has no basis to do so), the Agreement to Arbitrate is valid. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) ("The FAA thereby places arbitration agreements on an equal footing with other contracts . . . and requires courts to enforce them according to their terms . . . ." (internal citations and quotation marks omitted)).

### B. The Agreement to Arbitrate encompasses Plaintiff's claim.

The second prong of the relevant inquiry—whether the arbitration agreement encompasses the dispute at issue—is likewise satisfied in this case. *See WEBCO Indus.*, 2016 WL 9178806, at *2. The FAA is "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Grp.*, 460 U.S. 1, 24 (1983). So long as "allegations underlying the statutory claims touch matters covered by the enumerated articles," arbitrability is proper. *Mitsubishi Motors Corp. v. Soler Chrysler-*

9

*Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985). Accordingly, any doubts about the scope of an arbitration agreement must be resolved in favor of arbitration. *See Shankle v. B-G Maint. Mgmt. of Colo., Inc.,* 163 F.3d 1230, 1233 (10th Cir. 1999).

Further, in the Tenth Circuit, a three-part test "determine[s] whether a particular dispute falls within the scope of an agreement's arbitration clause." *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (quotation marks and citation omitted).

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. [Second], if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. [Third, w]here the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Id.* (quotation marks and citation omitted); *see also MidFirst Bank*, 2017 WL 1906946, at *4-5 (applying the same three-part test).

Here, the Agreement to Arbitrate is broad in its scope. It applies to "any dispute between [the Parties]" related to the transaction between them and "include[s], but [is] not limited to, disputes *related to* . . . the Vehicle," regardless of whether the dispute arose from Plaintiff's original purchase of the Vehicle or otherwise relates to the Vehicle in some way. Ex. 1, Agreement to Arbitrate. This is broad language regarding the agreement's scope because it includes "any dispute" and disputes "includ[ing], but . . . not limited to"

10

categories as broad as "the Vehicle." *Id.* Additionally, there are no carved-out exceptions to the scope of disputes subject to arbitration. *Contra, e.g.*, *Romero v. TitleMax of N.M., Inc.*, 762 F. App'x 560, 562 (10th Cir. 2019) (unpublished) (analyzing an otherwise-broad arbitration clause which included an exception to its scope, as well as an opt-out provision).

Accordingly, the Court should move directly to the third prong (regarding broad arbitration scopes) of the test utilized by the Tenth Circuit, not to the test's second prong. *See Cummings*, 404 F.3d at 1261; *MidFirst Bank*, 2017 WL 1906946, at *5 (collecting Tenth Circuit cases which included broad arbitration scope language). Doing so, the Court is to utilize a "presumption of arbitrability" which Plaintiff cannot overcome. *Cummings*, 404 F.3d at 1261 (quotation marks omitted). Because of the breadth of the arbitration clause, the Court must presume that the dispute between Plaintiff and BRSI is arbitrable. Indeed, all that is required for arbitration to be appropriate is for the allegations supporting Plaintiff's claim to "touch matters covered by the [arbitration agreement]." *Mitsubishi Motors Corp.*, 473 U.S. at 624 n.13.

Here, all of Plaintiff's allegations arise out of and relate to one or more of (i) the "purchase/lease by [Plaintiff] of the above-referenced Vehicle," (ii) "the Vehicle," (iii) "advertisement (s) [allegedly] made by the Dealership," (iv) "alleged promises, representations and/or warranties made to or relied upon by the Parties," and/or (v) "other dispute[s] related to the purchase/lease transaction." Ex. 1, Agreement to Arbitrate. Thus, not only do Plaintiff's allegations "touch matters" covered by the Agreement to Arbitrate, the allegations are expressly contemplated by the Agreement to Arbitrate. *See Mitsubishi Motors Corp.*, 473 U.S. at 624 n.13.

Most obviously, Plaintiff's claim is a "dispute[] related to . . . the Vehicle" (Ex. 1, Agreement to Arbitrate) because Plaintiff alleges that the subject of the prerecorded message she claims to have received was a request for her "to trade in her vehicle"—i.e., "the Vehicle" referred to in the Agreement to Arbitrate—"and take a test drive of a new vehicle." Compl. ¶ 24, ECF No. 1. Additionally, Plaintiff alleges that her claim is based on an "advertisement" made directly to her by BRSI, which is both an "other dispute related to [Plaintiff's] purchase/lease transaction" with BRSI and an "advertisement (s) [allegedly] made by the Dealership." Ex. 1, Agreement to Arbitrate. In these circumstances, "the [FAA] ***leaves no place for the exercise of discretion*** by a district court," and arbitration must be compelled. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis added); *see also Southland Corp. v. Keating,* 465 U.S. 1, 7 (1984) ("Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts.").

*Klutho v. JK Powerhouse LLC* is instructive on this point. There, the plaintiff alleged that he bought a car from the defendants' car dealership and, several months later, received "recorded voice robocall[s] from [the d]efendants . . . which ha[d] a recorded voice advertising [the d]efendants' car repair services." --- F. Supp. 3d ---, 2021 WL 2222688, at *1 (E.D. Mo. June 2, 2021). The plaintiff brought TCPA claims against the dealership and sought class certification for a class of individuals who received similar calls. *Id.* at *1. The defendant moved to compel Klutho's claims to arbitration pursuant to the arbitration agreement, which read: "Any claim, controversy, or dispute of any kind between the customer and the company arising out of or related to this agreement (whether based on contract, tort, statute, fraud, misrepresentation or any other legal or equitable

12

theory) shall be resolved by final and binding arbitration . . . ." *Id.* at *2 (capitalization omitted).

While the *Klutho* court ultimately concluded that it was not for the court to decide whether Klutho's claims were arbitrable—just as the Court should do here (*see supra* Part II)—its opinion provides some helpful analysis regarding whether Klutho's claims were covered by the arbitration agreement:

> Klutho alleges that the robocalls he received from defendants ***advertised their car repair services***, and that both calls were received relatively shortly after he purchased the vehicle and ***provided his cellphone number to defendants***. Based on Klutho's allegations concerning the subject matter and timing of the allegedly unlawful robocalls, ***I can reasonably conclude that his claims arose from and/or are related to his vehicle purchase***, and are thus arguably subject to the disputed arbitration agreement.

*Id.* (emphasis added).

Here, the Agreement to Arbitrate and Plaintiff's claim are similar to those in *Klutho*. In *Klutho*, the plaintiff alleged a claim which was related to the plaintiff's vehicle purchase because post-purchase repair services were advertised. Similarly, Plaintiff alleges a claim in this case which is related to her Vehicle purchase because the alleged message advertised the opportunity for a post-purchase buy-back of the Vehicle by BRSI. In both cases, post-purchase actions by the seller—either provision of repair services or re-purchase of the car—are at issue. This Court should decide similarly to *Klutho* and find Plaintiff's allegations to fall within the scope of the Agreement to Arbitrate.

Additionally, the alleged message at issue in this case relates to the purchase originally made by Plaintiff because it allegedly asks Plaintiff to sell back to BRSI the same

asset that she originally purchased from it. Indeed, absent Plaintiff's purchase of the Vehicle from BRSI, BRSI would have had no way of knowing that Plaintiff even owned the Vehicle so that it could request that she trade it in. That is, without the sale of the Vehicle to Plaintiff which resulted in the parties executing the Agreement to Arbitrate, there could never have been any alleged recording seeking return of the Vehicle by Plaintiff to BRSI. And, for the Agreement to Arbitrate to apply, the only requirement is for Plaintiff's claim to be a "dispute related to . . . the Vehicle," which undoubtedly is the case.

## CONCLUSION

"The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Here, there are no doubts. And, even if there are, such doubts must be determined by the arbitrator—not by the Court—because Plaintiff and BRSI expressly agreed that gateway arbitrability and scope-of-arbitration questions would be decided in arbitration. If the arbitrator decides that the TCPA claim at issue in this case is not within the scope of the Agreement to Arbitrate, Plaintiff might be able to proceed with her claim in this Court. But she may not do so until that occurs. This matter properly belongs in arbitration and, therefore, the FAA compels "the court [to] make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

Plaintiff and BRSI entered into a binding Agreement to Arbitrate that both (i) requires gateway arbitrability questions to be determined by the arbitrator and (ii) covers Plaintiff's claim in this lawsuit. Accordingly, the Court should heed the FAA's directive to

14

"rigorously enforce agreements to arbitrate," stay this proceeding, and compel Plaintiff's claim to arbitration. *See Mitsubishi Motors Corp.*, 473 U.S. at 626 (quoting *Dean Witter Reynolds Inc*, 470 U.S. at 221).

        Respectfully submitted,

        *s/ Ronald T. Shinn Jr.*
        Ronald T. Shinn Jr., OBA #19569
        Andrew J. Morris, OBA #31658
        MCAFEE & TAFT A PROFESSIONAL CORP.
        211 North Robinson, 8th Floor
        Two Leadership Square
        Oklahoma City, OK 73102
        Telephone:    (405) 235-9621
        Facsimile:    (405) 235-0439
        Email:    ron.shinn@mcafeetaft.com
                andrew.morris@mcafeetaft.com

        *and*

        Tyler E. Ames, Texas Bar No. 24116028
        MCAFEE & TAFT A PROFESSIONAL CORP.
        Two W. Second Street., Ste. 1100
        Tulsa, OK 74103
        Telephone:    (918) 574-3055
        Facsimile:    (918) 574-3155
        Email:    tyler.ames@mcafeetaft.com

        **Attorneys for Defendant BRSI, LLC**
        ***d/b/a Big Red Kia***

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2021, a true and correct copy of the foregoing document was filed and served via the CM/ECF e-file system upon the following:

Ignacio Hiraldo
*Counsel for Plaintiff*

*s/ Ronald T. Shinn Jr.*
Ronald T. Shinn Jr.
